Or oral argument. Could the attorneys, I'm assuming there's only going to be two presenting oral argument, would you both step up and identify yourselves for the record, please? Good morning. I'm Jennifer Getville from Laban and Walden on behalf of the appellants. And I'm Jeff Henderson on behalf of the employee, Wedbush Securities, Inc. I'm sorry, could you, Getville, Ms. Getville, and you're? Jeff Henderson. Henderson. All right. Each of you will have approximately 15 minutes to present oral argument, and from that, Ms. Getville, you may save out some time for rebuttal. All right? You may be seated, and Ms. Getville, you may proceed. Good morning again, Your Honors. May it please the Court. I'm Jennifer Getville of Laban and Getville, and at my co-counsel table today is my partner, Stephen Laban, and our associate, Lindsay Lampros. We represent the appellants, Dr. Whitaker and Pathology Institute of Middle Georgia, and I'd like to reserve five minutes for rebuttal, please. All right. Counsel, before you proceed, what's our standard review for determining whether Wedbush is a bank? So the interpretation of Article 4A, so de novo standard of review, which is fortunate for the appellants in this case, this case is the reason. Does your opponent agree with you that the standard of review is de novo? I don't believe so. No. So there's a question about the standard of review. At least you say it's de novo. Wasn't this a bench trial? It was a bench trial. All right. And so in a bench trial, doesn't the Court normally determine whether or not findings of the court are against the manifest weight of the evidence? This is the interpretation and the construction of a statute. Sure. But isn't it really under a particular set of factual circumstances as to whether or not there's a bank operating here? On that particular issue? Yes. I would disagree with that. Well, isn't one of the hallmarks of whether or not something is a bank, at least under the cases that have reviewed the issue, is whether or not that entity issues checks? That's absolutely not true. No? So you think that's not one of the hallmarks of whether or not an entity is a bank under the UCC? Under the UCC Article 4A, absolutely not true. Under Articles 3 and Articles 4, which apply to check writing and deposit accounts, obviously it makes sense that that would be a factor to be considered in whether or not a financial institution is operating as a bank. And I think the cases on Articles 3 and 4 put that forth. But with respect to Article 4A, that's not the case. Article 4A, the reason it came about was because 3 and 4 weren't sufficient for what was happening with funds transfers. Funds transfers was being treated as a unique and separate payment method that needed its own article. Otherwise, they would have just stuck with Articles 3 and 4. I'm sorry. Are there any cases on point regarding your position? With respect to 4A? Right. I think it's fair that both sides say that they're, in Illinois specifically, no, this is a matter of first impression. There's no 4A case specifically saying these factors make you a bank. What does 4A say that would take checks completely out of it? Because it applies to funds transfers. And it's intended to only apply to funds transfers, all of them. It's a bright-line test. And in lots of the different situations and a lot of the different 4A cases, the issues were not the same as what we had here. But the courts were like, you're doing funds transfers, you're a financial institution, 4A applies. Weren't the funds actually being transferred by BMO? So BMO is in the chain of transfers. Where was the money sitting? The money was, the funds were on deposit with Wedbush. Wedbush then has to segregate its clients of funds from his own funds, and they deposited them with BMO. And so that's where the funds were. Who issued the funds, though, the actual issuance of the funds? So the- Or you're saying they both did. Well, they both did. So our client, Dr. Whittaker and the Pathology Institute, they sent the wire instructions to Wedbush. Wedbush then, they didn't just take those exact instructions and forward them on to BMO. They did several things with them, and they sent them on to BMO. BMO is then the intermediary bank that sends money. Wedbush is the originating bank. BMO is the intermediary bank. And then the ultimate beneficiary bank ended up being in Poland in this case. So the trial court here, though, actually did base its decision on the fact that there was no checking services from- Yes, and we think that was part of the reversible error here. If you go back and you look at what the court actually said in their opinion, they used the wrong standards for determining whether or not Wedbush was a bank. And they based the decision on a nonexistent, ambiguous standard that, you know, they gleaned from relying on inapplicable case law. Article 3 and 4A cases don't apply here. And- What basis is that? That 3 and 4 do not apply to Article 4A cases? Yeah. So I think the big difference when we're looking at 3 and 4 in 4A, and I think part of the confusion, honestly, is the definition of a bank under 3 and 4 and the definition in the statute itself under 4A say the same thing. But the purpose of 4A was to do more with funds transfers and was happening under 3 and 4. And so in the comment section, as of course we've said, the idea was to go beyond the concept of a traditional bank because the reality of the world, as it was evolving, is that more than just typical commercial banks were executing fund transfers. So do you have-are there certain cases, then, that you think we should use if we are to write this decision in your favor? Right. I think the cases that we primarily rely upon, I think the Gold v. Merrill Lynch case and the Covina 2000 case, both of them take the approach of what we are hoping the court will take here, that, you know, Merrill Lynch didn't fit into the specific-they're not a commercial bank. They're not a savings and loan. They're not the types of institutions enumerated specifically right in that definition. Are there comments to Article 4 that suggest what you're suggesting? Article 4A?  Yeah. What are the comments that you- So the comment to-particularly to Section 102, they said that they had attempted to define the rights and the obligations in fund transfers by general analogy to the rights and obligations under negotiable instrument law, which is Article 3 and the law of check collection and depository accounts, and it hadn't been satisfactory. So in the drafting of it, they made a deliberate decision to write on a clean slate and to treat the funds transfer as a unique method of payment to be governed under unique rules that address the particular issues in this method of payment. And so are you saying that Merrill Lynch and the other case were Article 4 and that they have- No, they were both Article 4A cases. Okay. Yes. But you're saying those are the ones that would most support your position? Absolutely. Okay. Continue with your argument, if you would. Okay. The-as I had mentioned, the trial court made multiple reversible errors, principally ignoring that 4A applies to the funds transfers, focusing on the wrong standards for determining whether or not Wedbush was a bank for purposes of 4A and based their decision on a nonexistent standard. The trial court found that in order to conclude that Wedbush was a bank for purposes of 4A, Wedbush's actions had to, quote, rise to a level of direct involvement necessary to constitute a bank, end quote. There's no such standard in 4A. What were they supposed to do here? I mean, the procedures they had in place had been procedures that had been used before by the predecessors that were doing these fund transfers. So are you saying that their procedures were not commercially reasonable here? Right. Once we get past the funds transfers, it's a financial institution as defined under 4A, a bank, and then you get to the next step. So there's a safe harbor for banks, right? There was a balancing when the committee, you know, was putting together this proposed statute. Why do you say 202 is a safe harbor? It's intended to be a safe harbor for the bank. If they have commercially reasonable procedures in place, you know, because, right, we're trying to balance equities here. How can you say that it wasn't commercially reasonable in this case because of the fact that what we really have here is a hacker, and it was almost virtually impossible, or I think it is impossible for this transfer to have occurred any other way because there was, how would they know that it's a hacker? So that's the point. That's the entire point, and actually the committee addressed that point in the comments, I believe, in 105 when they were speaking about we have to balance the equities here, right? You have the customers and you have the banks, and we're trying to find a balance of the liabilities. Banks, you will be safe from responsibility if you have commercially reasonable procedures in place. Sorry to interrupt you, but to follow up on Justice McBride's question, what were they supposed to do here? Okay. So FCM, which was the predecessor to Wedbush, for this, everybody agrees, there was no written procedure in place or customer agreement in place here. It's just an old relationship. Fine. FCM, the procedure had been, if we want to call it their security procedure, Dr. Whitaker would call. He would follow up the phone call with an email. But this wasn't a written policy anyway. No, it wasn't a written policy anyway. If you want to call it, this was their pattern in practice. Exactly right. Did the court get to the commercially reasonable aspect of this? So a lot of evidence and testimony was had on commercially reasonable lists, whether Wedbush acted in good faith, our damages. We went through the entire evidentiary procedure, but they did not rule on that, no. Oh, okay. Because they found that Wedbush was not a bank, so they stopped there. Okay, so if it's just the pattern in practice, and how do we know? There was multiple buyouts and, you know, then the prior people. Did your client ever institute, this is how it's been done, this is how we want to continue. If we make a transfer request, you need to call us or you need to, there needs to be some affirmative act. Did that ever happen? No, that didn't ever happen, and I think there's a couple of reasons for that. One is our client, the customer, didn't have an obligation to make sure they were following the rules that they were supposed to be following. The statute for it is supposed to protect my client. It's not their job to make sure they're following those rules. And also, given the timing of when things happened here, I think there was no time for that to happen. Nevertheless, Wedbush is tasked with the responsibilities of what it is doing, regardless of whether they've been doing it for one day or, you know, five years. But isn't their obligation different based on whether we determine the function or determination was correct that they are not a bank? If they are a bank, you've got certain obligations. If they're not a bank, you don't. Isn't that correct? If they're not a bank, so if they're not a bank, then... You lose. We lose, of course. We're really glad this is a de novo review. If they're not a bank, we lose. But I think the reason they are a bank is because 4A is trying to pull in more than just the BMO-Harrises of the world, right, the Chase Banks of the world. They're trying to get financial institutions because you have a situation... But did they ever envision when they wanted to enhance this and tighten it up and try to secure somewhat of a difference for transfer of funds, did they really envision the hacker situation? Yes. Okay, and are there cases that clearly hold that this applies when you have this kind of a hacking situation? Any case out there that we can look at that says you're clearly in the right here? I don't think we even need to go to cases. I'm not aware that there's any specific case like that. But hasn't this, do you think it hasn't happened already? Oh, no. Of course it happens. And that's exactly... Maybe if there's a case out there that already says that this applies here, it applies where you have a hacker. So I don't think we even need to go to a case because in the comments themselves, the committee gave examples. If I could interrupt you. Sure. Where specifically are you looking at in the comments? What specific language is it in the comments that you're saying, if you apply these comments, why Bush is a bank? In the comments to Section 105, I don't have the statute here in front of me at the moment. But they give exact examples of this situation itself, where this is why we're trying to balance the liabilities of the person who's making the instruction, the sender of the instruction, to the person they're giving their instruction to, right? What do we have to do with this relationship? Who's on the hook if these types of things happen? And in the comments, they give three different examples of exactly this sort of situation. Somebody hacks the e-mail. It's not... They don't put the onus on my client, okay? Even if their e-mail is hacked, it's a matter of, well, then what happens, right? Did the bank... Even if my client gets hacked, if the bank doesn't have procedures in place, the point is they have to have some responsibility. They need to have some procedures in place. Do they have procedures in place? I mean, they send an e-mail back saying, this is your request, and they sent the receipts also, the statements indicating that these funds are being withdrawn. I mean, what else were they supposed to do? Because they followed the procedures that they had in place in terms of safeguarding, make sure their transfers are being requested by the appropriate party. Okay, so we're talking then about... So in Section 201 of Article 4A, which is where it defines what a security procedure is, and what you just described is not enough. Well, it's not what I'm describing. This is what happened here. Oh, well, exactly. So what happened here is not enough. In the comments themselves, they say that security procedure, it doesn't apply to procedures that the receiving bank, Wedbush, follows unilaterally in processing the payment orders. And then sending an e-mail back in the hacked e-mail is exactly why there needed to be something more. The definition of security procedure talks about, you know, a way to verify the payment order. Doesn't that also say that a security procedure generally is a procedure established by the agreement of the customer and the bank? Right. So don't you have a problem there? Because there is no, there was no, any real procedure. There was no written agreement. There was no real procedure between Wedbush and our client. But what we had here... So aren't we at a sort of a point here that, you know, you don't have a procedure. How can you impose one that doesn't exist? Because the statute imposes one. The statute requires it. No, but it says what a security procedure is. And it's generally a procedure established by agreement of the customer and the bank for the purpose of verifying that a payment order is that of a customer or detecting error in the transmission or content of the payment order or communication. They define what this security procedure is. And they say it's generally established by agreement of the customer and the bank. That isn't, we don't have that here. How are we supposed to create one now? Well, you don't, so if there isn't one, then the bank doesn't get to take, make use of the safe harbor. That's the point. If there's no commercially reasonable security procedure in place, then there's no safe harbor for the bank. They're on the hook for sending, you know, sending out the instructions and sending out the funds to the wrong recipient. And that's exactly the point. So if there's no security procedure, how can they meet that threshold of having a commercially reasonable one? Would you also say that we're reviewing that de novo too? That aspect of it? Yes. Yes. And mostly, in particular, because the trial court never even made a ruling on that aspect at all. Okay. Because the court said this isn't a bank. Isn't that what the court said? Yes. Okay. Anything further you want to add at this time? You haven't talked about the summary judgment. I mean, obviously, that is de novo review. Right. So then just quickly on. . . So is this, well, just going back. You know, aren't there cases under Articles 3 and 4 that say that a key factor in the determination of a bank, that an entity is a bank, is whether it offers checking services? I mean, there's a decision out of Arizona. I know it's a circuit. It's a district court decision, I believe. But then there's Nissan v. Morgan, Stanley. Sure. And weren't they talking about 3 and 4? They're talking about 3 and 4. But you told me earlier that there were no cases interpreting 4 that would source the checking. 4A. 4A. So that's our position. Our position is you don't need to look at 3 and 4 because 4A is intended to be broad. They say in the comments that they tend to be broad in pulling financial institutions outside of commercial banks. So even if that broad rule is not the way that the court's going to look at it, we had multiple instances here where there are reasons and facts and evidence as to why Wedbush was acting like a bank beyond the very basics of what we say is necessary. So I have a question. You said we shouldn't look at 3 and 4, but actually isn't the definition of a bank in 3 and 4 the same as in 4A? It is until you look at the comment. The specific comment on the definition of bank in 4A broadens it intentionally to be beyond just traditional commercial banks and uncover more financial institutions because in the reality of today's world, it's not just the BMO Harris's and the JP Morgan's that are wiring funds. What's the trigger or the catch suggestion in the comment, which, of course, are not binding, but that says give us something in that comment besides that it's meant to include more than, you know, the traditional banks? What's in that comment that we can pull out of there and say, okay, this is definitely a bank? I think pulling it out of the comment, I think this is the case where we're looking at how the other courts have looked at 4A and found financial institutions that are not banks, such as Merrill Lynch, which is a brokerage firm, are applicable to it. I think that's it. We don't, especially here in Illinois, and I don't think we have any particular case right on that point. We don't. In Merrill Lynch, you're saying there was absolutely no evidence of a checking availability? Right. Actually, that came up at trial. And there was a statement that, well, there was check writing involved in that case, and the judge went back and reviewed the case during a break and then said, I can't see where it says check writing in here because it doesn't in that case. And even if we did, I don't want to get into all the evidence, again, as to why Wedbush was acting as a bank because we don't think those extra things are relevant here. It's a wire transfer. You're a financial institution because you're providing wire transfer services to your customers. That's it under 4A. But if you have to look at that, we have to find, well, they're a bank also because of X, Y, and Z. Defendants Exhibit F is there are procedures that they use for incoming wires, ACHs, and checks. They also have their outgoing procedures, and they say we provide outgoing wires, ACHs, and checks. So they debited our client's account for sales taxes and storage fees, and there are lots and lots of things here where they had these extra evidence of them acting as a bank. But that's really, from our perspective, not the focus of 4A. Things got a little lost in the weeds there because they are offering the services of funds transfers, and they're making the funds transfers on behalf of their clients. They argue, well, we were just an agent. That's not true. They changed the wire transfer instructions that came from, purportedly, our client. They changed the account number to fix it. They changed the SWIFT codes to fix them. They changed the Ioban numbers to fix them when they were wrong. They gave the hackers the instructions on how to send the wire instruction back to them. But they didn't know they were hackers. They didn't know they were hackers, but they were doing all of these things. They had three departments that were reviewing the wire transfers before it got input into the system, which is an open portal with BMO, and then BMO just was the intermediary bank that sent it out. And there's no liability whatsoever for BMO under this kind of factual scenario? No, they're just the intermediary bank. Okay. All right. Well, we'll give you some time for rebuttal. Okay. Thank you. Sure. Mr. Henderson. Good morning. I'm Jeff Henderson, along with my colleague, Bob Christie, who represent Wentworth Securities. I'd like to thank the Court in advance for its time and attention. I'm going to begin not the way I intended to begin, but I'm going to address some of the things that you've just mentioned in your questions and responses. I would direct the Court to Comment 105. Comment 105 we think is critically important in this context under Article IV as it relates to Wentworth's role in this transaction. Comment 105 under Article IV-A provides that an intermediary is deemed to be an agent of the sender for the purpose of transmitting orders and related messages for the sender. Whitaker, in this case, undeniably, albeit through the hacker, sent requests for wire transfers to its intermediary, Wedbush, its agent who then carried those orders to BMO Harris for processing and the ultimate wire transfer of the funds. So it's BMO Harris, not Wedbush, as we've heard again and again. We've seen these appellatories that acted as the originator bank. That term is defined under Article IV. So Wedbush isn't a bank? Wedbush is not a bank. So what standard do we use to determine this? Well, I'm not sure. Standard of review. Whether the decision of Judge Kubasek was against the manifest way of the evidence. Okay. It was a fact question. Well, if we're interpreting a statute, isn't that generally a no-go question? It can be. Typically it's. Okay. So you need to tell us why it's not. And that standard is only a manifest way. If we have to determine this issue based upon a manifest way of the evidence, it's a harder hill to climb than de novo review. Don't you agree, Mr. Henderson? No. They're two different standards. I want to spend a little time with you going through the facts that are actually admitted evidence. De novo review is a different standard of review from manifest way. It is. It is. So if you want to just discuss the facts, that's perfectly fine. But you've taken a contrary position, and at some point this Court will have to determine what the standard of review is. Generally in a bench trial, we're looking at it under a manifest way, not de novo review. So there was a lot of commentary from minutes ago about Article 3, Article 4, and Article 4A. If you look at Article 3, Article 4, and Article 4A, they all use the same definition for bank, and all three have treated the definition of in the business of banking in the identical fashion. And so we can say with a fair amount of certainty that uniformly they treat this issue the same. And what it all boils down to is one predicate act in all these cases, whether or not the customer at issue was actually able to write checks out of that account. Once that occurs, the brokerage firm or the financial institution, who's not a traditional bank, crosses the transit. In this case, there's absolutely no evidence of check writing. You just heard a moment ago some discussion about Exhibit F. If you look at that carefully and look at the briefs, what was really going on there with respect to F is that Dr. Whitaker and the Pathology Institute were charged storage fees for the silver bars that WebBush held. They were debit entries in his account. There was no check written out of an account to pay for anything or anybody's obligation. They were debit entries, ledger entries, issued by the FCM in payment for those silver storage charges. It doesn't even remotely resemble a check writing account. I have a question. Why is checking or the ability to write a check and use a checking system within a financial institution a distinguishing factor with determining whether or not an institution is a bank or not? I'm not sure I know the answer to why, but I know that it is. All the cases say the same thing. It's uniform throughout. Article 3, Article 4, Article 4A. And they all define bank in the same fashion and they all define the business of bank in the same way. But counsel's arguing that that's not the determining factor, whether there's an availability of checking. She's basing her whole argument on that. Everything she says assumes that we're a bank. And I want to take a minute to address the actual evidence that was admitted in this case, which resulted in Judge Kabatsky concluding we're not a bank. And therefore, I don't have to get to the second question, which is whether or not your procedures were commercially reasonable. And so the evidence in this case really consists of three or four discreet facts. The wire transfers that the hacker sent to Wedbush, the emails that Wedbush sent back to Whitaker, which ultimately went to the hacker, which were to confirm the receipt of the wire transfer request, to confirm the processing of the request, and to confirm that it had been processed. And then lastly, we know that there's no dispute that Wedbush was registered as an FCM with the Commodity Futures Trading Commission, that it maintained a customer segregated account at BMO Harris, and that that account at BMO Harris was used to hold, to receive, and disperse customer funds, and that there were three departments, customer service, customer risk, and accounting at Wedbush that were used to verify and process these requests. When I say verify and process, all that really meant is that they were there to confirm that the money was on hand before they tendered the request to BMO Harris to process. That procedure that I just described is no different than the activity of other FCMs and many other commercial enterprises that provide wire transfer services for their customers, but are nonetheless not banks and not engaged in the business of banking. Contrary to their allegation or their argument, the fact that we processed a large number of wire transfer requests deems Wedbush to be engaged in banking isn't even relevant to this question. The agency relationship in this case with respect to wire transfers was really no different than the agency relationship that Whitaker enjoyed with respect to trading. He would transmit a request to do a trade. Wedbush would then route that to be applicable or the appropriate exchange. The trade would be executed and they would confirm the trade back to him. It's not a lot different from what's going on with respect to his request to wire money out of his account. They send the request to Wedbush. Wedbush looks at it. It's appropriate. They tender it to BMO Harris, which is the only party that could send money out in this case. This nonsense about a third-party bank over in Poland as the originator bank or the center bank, it's not even close to being accurate. The cold hard facts are the customer deposits money in the customer sec account in Wedbush's name at BMO Harris. If it wants money sent out of that account, it makes a request. It requests it's routed to Wedbush. Wedbush essentially validates that it's proper and gives it to BMO Harris to process. That's the story here. That doesn't elevate Wedbush to a bank under Article IV. The money in this actual account, is that held by BMO? It's held by BMO at all times. There's no confusion. There's no dispute about that. So this money is not being held by Wedbush? Correct. It's actually being held at all times by BMO? Correct. Okay. And this contention in the appellate briefs that the designator that BMO, we didn't talk much during the argument, but it's confusing. The designator used by BMO Harris, OB, originating bank, was an internal designation that it assigned for its SPIG or financial institution group customers who were regularly involved in sending out wire transfers. But the only person who testified at trial on that issue was a BMO Harris employee herself, Megan Keltz. And Megan Keltz said very clearly, this is just an internal descriptor. It essentially means nothing. We are the bank in this relationship. We hold the money. We send the money out. There's nothing in the record at the circuit court level to contradict that. We think that's important. What about this idea that Article 4 was supposed to tighten up the definition or the broadness of... I'm going to restrain myself from giving you the full leads on this issue. I think you've already, based on the questions you've asked, identified what is really important in this case. I can tell you that I just simply disagree with their interpretation of what the notes and the comments mean in this context. Anything further, Mr. Henderson? What about the summary judgment? That is de novo review. We agree on that. That is de novo review. Just a couple of comments. While you're looking for your comments, I have a question. Much of the evidence that was presented at trial focused on Webb Bush being a futures commission merchant, but it was also a broker-dealer. Should that matter to us at all? To the extent that there are separate rules that apply to the separate divisions of the company, yes.  Dr. Whitaker and the Pathology Institute were always commodity trading customers of the FCM, which is regulated by the CFTC, or the Commodity Futures Trading Commission. The suggestion by their expert that similar rules apply is completely wrong. The broker-dealer never handled a penny of his money, never conducted a single trade for Dr. Whitaker. It was always proposed with the FCM. But back to the question about summary judgment, this is pretty simple as we see it. It's undisputed in this case that a hacker, through no fault of our own, breached Dr. Whitaker's systems and then interposed himself as Dr. Whitaker to steal his money. The money was stolen. Two weeks after the fact, I think it was January 13th of 2014, we learned for the very first time that there's a hacker involved. It is impossible under those circumstances for us to have A, knowledge of the material fact, and B, as the case law requires, do something to conceal it or to mislead him so that he's damaged. All the damage had been done. It's in the rearview mirror. There's just no fact, even a close question, that would support a different finding. And you can look at the briefs that were submitted as part of the record in this case. That was fully vetted to the nth degree. There's not one iota of evidence that would suggest that Wedbush had any knowledge that this was going on. If I can interrupt you, what about the e-mails themselves? Supposedly they had European dates, there were some spellings, and they argued that Dr. Whitaker, an individual like himself, well-educated, wouldn't be sending out e-mails. As our expert testified, in real life, typographic errors occur all the time in text, in e-mails, in back office communications, and although it looks horrible after the fact, it's real life. You can take your own life experiences to make that decision or that determination and that assessment. But in this case, and as some of the witnesses testified, Wedbush had worked at other FCMs. It was no different. It's sort of a self-correcting mechanism, if you will. When you see a communication that comes in from a customer, and it transposes, a long-time customer in this case, it transposes an iota one, you correct it. You don't call them back and say, by the way, Joe, you gave me the wrong number. It's almost embarrassing to ask that question. I'm not saying with the benefit of hindsight that might have been helpful, might have prevented a problem, but that's just not how the real world works in a back office at a broker-dealer or an FCM. Anything else you want to add? No, nothing further. All right. Thank you. Thank you. Brief rebuttal. Thank you. I just want to clarify a few points. I think we're almost, in a way, going the same way it went when we were at trial. This really is a fairly simple and straightforward plain reading of the statute of 4A is all that really needs to happen here. We're looking for just a simple construction within the letter of the statute itself and taking into consideration the extensive comments on some of the sections. Wedbush is not an agent here. In this process, in funds transfers, they were the originating bank. We can get over the word bank, which seems to be the problem in this case. The definition of a funds transfer... But isn't that the whole case, whether or not they are? Well, I know, but the word bank, they're a financial institution, right? It's more than just what we think of as banks. And our client was the originator of the wire. He sent the wire instructions to Wedbush. That makes Wedbush the originating bank. When they send down those instructions to BMO Harris, BMO Harris becomes the intermediary bank. BMO then pays the funds to the beneficiary bank. That's just the process. Sometimes there's not an intermediary bank. If I sent my wire instructions to JPMorgan Chase, there would be no intermediary bank. Chase is going to wire right out for me. And so that's how the chain works. Whether they want to be a bank or not, they are for purposes of 4A, because that's how the terms are defined, and that's how the process was laid out by the drafters of the statute. Also, the red herring of the check writing cases, they're all Article 3 and 4 cases. If Article 3 and 4 were enough, we wouldn't even have 4A. So that's why the check writing is just, again, it's a red herring. It really isn't necessary for purposes of being a financial institution subject to 4A who is issuing funds transfers. It's not funds transfers and check writing. Just funds transfers. Also, it's in the funds transfer definitions. It's in Section 104, which goes through the definitions of funds transfers, that the comments speak more to these types of roles and how these roles were anticipated to play out. And earlier when I was thinking of 105, which is focused on, you know, what's the definition of a bank, I was really thinking of, with respect to the fraud issues, you asked, was there a case? Is there a sample or a hacker and, you know, how this all worked? It's in the comments to 203, which talks about the different scenarios and how to balance the liabilities between a bank who has a customer who gets hacked. If the bank has the commercially reasonable security procedures in place, then it's not the bank's problem. It's the customer's problem. But if those aren't there. Isn't your burden of proof in the fraudulent concealment by clear and convincing evidence? Fraudulent concealment? You're right. So let's talk. I didn't get a chance to talk about that. We'll talk about that for a moment. Separately from the 4A cases, I think in that case the court missed it a little bit by misstating the holding of the central states' cases, by holding that concealment had to be done with an intention to deceive. They ignored the cases that followed central states, which focused on different standards for finding active concealment. You know, we had material issues of fact that existed here. What happened between when my client submitted the wire transfer? Can we just do just really briefly the first two elements of fraudulent concealment? And if you can concisely tell us how you showed by clear and convincing evidence that Wedbush actually concealed a material fact that created the duty to speak and, two, that they induced a false belief. What is the primary evidence by clear and convincing evidence here that you have? So the very first, there's more than one, but the very first material fact that they concealed was the fact that one of the fraudulent wire transfer instructions was rejected. They rejected that instruction, and they didn't contact my client and say, oh, by the way, yes, they sent an email back to the same compromised system. You're saying that's concealing a material fact. Yes. That somebody was sending wrong wire instructions through to his account. That something was rejected was a material fact. Okay. Yes. But do we know exactly the reason why it was rejected? It had, I believe, there are so many differences, but I believe it had an incorrect SWIFT code listed for the bank. I think that was the reason for the rejection. And you're saying that would also support that the defendant intended to induce a false belief there? Yes. They, at that point, yes. So you don't think they were, like, duped, just like, I mean, you're thinking that they were completely aware right away, this is a hacking situation, and I've got to let Dr. Whitaker know. I don't know that that's the, I don't know that that's the, I don't know that that's the exact, I can't say that. I can't say that. But I don't know that. That's really kind of what a material fact would be, is that, you know what, we know this was a hacker, and we have an obligation right now to tell him, you got hacked, and we got duped. Right. So the first one, the first instance is the one I just said. The second time it happens is on December 29th, when my client received a statement that looked wrong to him, there was all kinds of things. He calls Wedbush, and he says, look, I've gotten this weird statement. And even they were like, well, I don't know. The hacker got a hold of those. The hacker had gotten a hold of those somehow. Yeah. You're saying that they were on notice immediately, even though the hacker, you know, directed that elsewhere. I mean. They were on notice because at least at that point. The hacker got in and really interfered and changed all that, didn't the hacker? Right, and once we brought it to their attention, and they saw this is not our statement, this is what we sent them, what it looked like. It was after they got duped. Yes. And after that point. I don't know any fraudulence. Let me ask it this way. Yes. Excuse me. I'm sorry. You go ahead. No, no, no, no. Go ahead. Go ahead. No, I've lost my thought here. Go ahead. So when they send out the statements and they send out the receipts, how are they trying to hide something? It's the hacker who changes the receipts and the statements. And in this case it was, honestly, the hacker receiving them too. So that was why when that incident happens on the 29th and our client calls them, talks to them, sends them the statement, they get it, they see it. Instead of calling back, they said, okay, we'll call you back. They don't call us back. They send back statements to the compromised email. Now whether they, you know, that's the issue of fact. Do they know it's compromised at that point because they see what we've sent them? It can't possibly be right. Something has to be happening here. And then there's radio silence from them. And so our client does all the investigation and finds out two weeks later that, yes, the cloud account where his email was was hacked. I don't know what happened. We don't know. These are the material issues of fact. Are they concealing it? Do they know? And at what point did they know? That's why this is an issue. Thank you. Any other comments that you wish to add before you sum it up? Just in general, we rely on our briefs for all the other matters we haven't talked about here today. And with respect to 4A, we believe there's enough for you to reverse the judgment and issue judgment in our client's favor. And with respect to the summary judgment, we'd ask that you reverse it for remand for a jury trial. All right. Thank you. The case was well-argued, well-read. And the court will take it under advisement. And we will now stand in recess.